## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **Kedrick White,** ) | |
|     **Petitioner,** ) | |
| ) | |
| v. ) | 1:22cv300 (AJT/JFA) |
| ) | |
| **Warden Leu,** ) | |
|     **Respondent.** ) | |

### MEMORANDUM OPINION

Federal inmate Kedrick White ("White" or "petitioner") filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus that raises two grounds for relief: (1) his due process rights were violated because he was not provided with a copy of a Discipline Hearing Officer's ("DHO") report in a timely fashion following a hearing, which resulted in his administrative appeal being dismissed; and (2) and that the evidence relied upon by the DHO was insufficient because another inmate claimed possession of the knife. [Dkt. No. 1 at 7]. The respondent filed Motions to Dismiss [Dkt. Nos. 8, 9], as well as a Motion for Summary Judgment, [Dkt. No. 10], with a brief in support and exhibits. Petitioner received the notice required by Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. Accordingly, this matter is ripe for disposition. For the reasons stated below, respondent's Motion for Summary Judgment is GRANTED, the Motions to Dismiss are DENIED AS MOOT, and the underlying petition is DISMISSED.

[intentionally left blank]

## I. Statement of Facts[1]

1. Petitioner is currently detained at the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg") and is serving an aggregate 240-month sentence. [Dkt. No. 11-1 at ¶ 4].[2] Petitioner's projected release dated from his federal sentence is March 20, 2031. [*Id.*].

2. On October 12, 2019, Correctional Officer Rideout found a weapon located under White's mattress during a search of his cell, which he shared with another inmate. [*Id.* at ¶ 5].

3. Correctional Officer Rideout issued Incident Report No. 3315143 to White on October 12, 2019, charging him with violating Bureau of Prisons ("BOP") Disciplinary Code 104, possessing a dangerous weapon. [*Id.*]. The Unit Discipline Committee ("UDC") reviewed the incident report on October 17, 2019 and referred the charge to the institution's DHO for further hearing. [*Id.* at 15]. The report reads as follows:

> On Saturday, October 12, 2019 at approximately 08:35 am while conducting housing unit rounds on A-North I approached cell A04-062 which is assigned to inmate White, Kedrick #26911-076. Upon entering the cell I observed inmate White and two unidentified inmates in the cell.... I asked them what they were doing in the cell, and Inmate White stated, Nothing, we're just in here chilling. The inmates in the cell appeared uneasy and fidgety, so I performed a pat-search on the occupants in the cell, starting with Inmate []. After searching Inmate [], I was unable to find anything, but once I finished[,] I observed him throwing something behind his back out of the cell door. I immediately stepped outside the cell to see what he threw and I discovered that it was a homemade weapon sharpened to a point.
>
> Once I secured the weapon, I got Inmate []'s ID card and contacted [the] Compound Officer and informed him of my findings. After that I pat-searched Inmate White and the other inmate in the cell [but] was unable to identify the third inmate be[cause] he did not have his ID on him and informed them all to go downstairs to the dayroom area. While searching the cell I recovered another shank under Inmate

---

[1] The historical facts are not in dispute, Petitioner has not disputed respondent's statement of facts, and the respondent's statement of facts is therefore adopted. *See Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997) (court assumes uncontroverted facts in movant's motion for summary judgment are admitted); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).

[2] *United States v. White*, Case No. 2:14cr20118 (W.D. Tenn. Nov. 19, 2014) (156 months as to Count 3, 84 months as to Count 4 to be served consecutively, for a total term of 240 months incarceration), aff'd, Case No. No. 15-6341 (6th Cir. Nov. 10, 2016).

2

> White's mattress. I contacted [the] Operations Lieutenant and awaited further instructions. Within seconds [the] Activities Lieutenant entered the housing unit and instructed all inmates in the unit to lockdown [in order] to identify the third inmate involved. It was then that Inmate [] approached me and informed me that he was not assigned to this housing unit, [and] I was able to identify him as the last inmate involved.

[Dkt. No. 11-1 at 13].

  4. On October 17, 2019, the UDC gave White a Notice of Discipline Hearing before the DHO, which advised him of his rights at the hearing. [*Id.* at ¶¶ 6, 8; and at 18]. Specifically, White was advised of: his right to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO; to have a staff representative; to call witnesses to testify on his behalf and present documentary evidence; to present a statement or remain silent; to be present throughout the disciplinary hearing; to be advised of the DHO's decision and disposition in writing; and the right to appeal the DHO's decision. [*Id.* ¶ 8; 18, 20]. White acknowledged being advised of these rights and indicated he did not wish to call any witnesses or have a staff representative assigned to his hearing. [*Id.*].

  5. The DHO hearing was held on November 18, 2019, and the DHO found White committed the Code 104 violation, possessing a dangerous weapon. [*Id.* ¶¶ 9, 10-14]. After finding White guilty of the prohibited act, the DHO sanctioned him to the disallowance of 41 days of good conduct time, 30 days of disciplinary segregation, 6 months loss of commissary privileges, and 2 months loss of phone privileges. [*Id.* at ¶ 13]. The report was not signed until April 26, 2021 and a copy was delivered to White on April 28, 2021. [*Id.* at 27].

  6. While in the BOP's custody, White has filed twelve administrative remedy requests through the BOP's Administrative Remedy Program, four of which relate to Incident Report No. 3315143. [*Id.* ¶ 20].

3

7. White attempted to appeal the DHO's finding of guilt and sanctions prior to actually receiving a copy of the DHO's final report. [*Id.* ¶¶ 21-22]. Petitioner subsequently received a copy of the DHO report on April 28, 2021 and attempted further appeals. [*Id.* ¶ 15].

8. On April 16, 2021, White submitted an administrative remedy appeal to the BOP's Mid-Atlantic Regional Director's Office, alleging that he had not yet been provided with a copy of the DHO report from the disciplinary hearing in which the DHO found him guilty of violation of Code 104, possession of a dangerous weapon, and imposed sanctions. [*Id.* ¶ 22]. He alleged a violation of BOP policy and his due process rights. In a response dated May 7, 2021, the Regional Director's Office denied Petitioner's request, and indicated that while White had not yet been provided a copy of the DHO report, there was no indication that his ability to utilize the administrative remedy process had been hindered. [*Id.*]. Additionally, the response indicated that the disciplinary procedures had been substantially followed, the evidence supported the DHO's findings, and the sanctions imposed were appropriate for the offense. White was informed he could appeal the Regional Office's response to the BOP's Central Office. [*Id.*].

9. On May 13, 2021, White submitted another administrative remedy request to the Mid-Atlantic Regional Director's Office, again appealing from the DHO proceedings for Incident Report No. 3315143. [*Id.* ¶ 23]. His remedy request was rejected and returned to him because it had been filed at the wrong level of the administrative remedy process, and he was instructed to file his appeal with the BOP's Central Office. [*Id.*].

10. On June 21, 2021, White submitted an administrative remedy request to the BOP's Central Office, appealing from the DHO proceedings for Incident Report No. 3315143. [*Id.* ¶ 24]. His remedy request was rejected and returned to him because he had failed to provide a copy of the Regional Office level appeal and May 7, 2021 response. [*Id.*]. White was instructed that he may refile his remedy request within 15 days of the date of the rejection notice. [*Id.*].

11. On August 12, 2021, White submitted another administrative remedy request to the BOP's Central Office, again appealing from the DHO proceedings for Incident Report No. 3315143. [*Id.* ¶ 25]. His remedy request was rejected and returned to him because he had failed to provide a copy of the Regional Office level appeal and the May 7, 2021 response. [*Id.*]. White was again instructed that he may refile his remedy request within 15 days of the date of the rejection notice. [*Id.* 14]. As of June 13, 2022, White had not filed any additional administrative remedy requests concerning Incident Report No. 3315143. [*Id.* ¶ 26].

## II. Standard of Review

The respondent has submitted a motion to dismiss or in the alternative a motion for summary judgment. [Dkt. Nos. 8-10]. A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed declaration and portions of the disciplinary hearing record, and White has been provided with notice of his rights in accordance with *Roseboro* and has responded, the respondent's motion will be construed as one for summary judgment.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. *See Celotex Corp. v. Citrate*, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. *Id.* at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). In

evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Analysis

To obtain habeas relief under § 2241, a petitioner must demonstrate that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner alleges the DHO violated his due process rights by failing to provide him with a copy of the DHO report in a timely fashion following the hearing, and in discounting White's denial that either knife was his and each of the other inmates had admitted the knives belonged to them.[3] White's petition and response to the motion for summary

---

[3] The affidavit submitted by White from one of the other inmates, Edred Buchanan, was not executed until November 27, 2019, approximately a week after White's hearing. [Dkt. No. 1-2]. The year of the date on the affidavit is unclear on the copy submitted, but it is written in the past tense so the hearing had already taken place and Buchanan was released from the BOP on September 1, 2020. *See* https://www.bop.gov/inmateloc/ (search Inmate No. 11260-070) (last viewed Feb. 1, 2023). The Court therefore finds that it was dated November 27, 2019. In addition, when advised of his right to call witnesses or submit their written statements if the witness was unavailable, White indicated that he did "not wish to have witnesses." [Dkt. No. 11-1 at 18]. There is no indication that Buchanan was unavailable at the time of the hearing and White did not call him or submit a written statement from him. Buchanan's affidavit also implies that he and the third inmate admitted possession of the knives. Importantly, contrary to White's argument, he could be found guilty of possession of the weapon via the theory constructive possession for the weapon found in his cell underneath his mattress. The Fourth Circuit has explained, "[c]onstructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area." *McClung v. Shearin*, 90 F. App'x 444, 446 (4th

judgment argue the facts, but do not dispute them, and the argument does not assert that any specific cognizable prejudice resulted from the delay.[4] While White has a protected liberty interest in vested Good Conduct Time ("GCT"),[5] he does not have a protected liberty interest in his 30 days of disciplinary segregation, 6 months loss of commissary privileges, or 2 months loss of phone privileges, as such claims are not cognizable under § 2241.[6] Therefore, the only sanction in which White has a protected liberty interest is his loss of 41 days of GCT.

**A. Exhaustion**

While habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," it is an "avenue of last resort." *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983)). Although § 2241 does not contain a statutory exhaustion requirement, courts

---

Cir. 2004) ("*McClung I*") (citing *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001)); *see Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1999) (due process is not violated when a prisoner is disciplined for possession of a weapon found in a cell occupied by the prisoner and three other inmates because there was "some evidence" that the prisoner possessed the weapon); *see, e.g., McClung v. Hollingsworth*, No. No. 06-6699, 2007 U.S. App. LEXIS 9558, *10 (4th Cir. Apr. 26, 2007) (*McClung II*) (where a dangerous weapon was discovered in a cell that was the "exclusive domain" of the petitioner and his cellmate, the constructive possession rule provides the necessary "some evidence" sufficient to sustain a disciplinary conviction); *Santiago v. Nash*, 224 F. App'x 175, 177 (3rd Cir. 2007) (citation omitted) (finding that contraband taped to inmate's bed was sufficient evidence where only a "small number of inmates are potentially guilty of the offense charged").

[4] Indeed, "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). To be sure, White was not denied a right to appeal because once he received the DHO report, his window to appeal the DHO's report opened. Consequently, he can establish no prejudice with regard to the delay in receiving the DHO's report. *See Piggie v. Cotton*, 342 F.3d 660, 678 (7th Cir. 2003) (dismissing claims related to a disciplinary hearing because petitioner failed to establish prejudiced).

[5] *See Puranda v. Hill*, No. 3:10cv733, 2012 U.S. Dist. LEXIS 84238, at *8 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007)); *see also Wolff v. McDonnell*, 418 U.S. 539, 560-61 (1974).

[6] *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison"); *see also Wright v. Shartle*, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (finding that an inmate's "loss of commissary privileges ... doe[es] not implicate due process concerns"); *Patterson v. Bolster*, No. No. 3:18cv854, 2020 U.S. Dist. LEXIS 19857, *16 (E.D. Va. Jan. 30, 2020) (inmate "does not have a protected liberty interest in his placement in disciplinary segregation, loss of phone use, or loss of commissary use").

consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91 (1973) (requiring exhaustion in § 2241 petitions); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.") (citing *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (same). "Failure to exhaust may only be excused upon a showing of cause and prejudice." *McClung*, 90 F. App'x at 445 (citing *Carmona*, 243 F.3d at 634-35). The exhaustion requirement allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Further, exhaustion will "improve the quality of suits that are filed by producing a useful administrative record." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.").

An inmate need exhaust only such administrative remedies as are "available," *Ross v. Blake*, 578 U.S. 632, 648 (2016), and a court may "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). This Court has noted that "in rare cases, § 2241 habeas petitioners have been excused from the exhaustion requirement if they can show that proceeding through the administrative remedy process undoubtedly would be an exercise in futility that would serve no useful purpose." *Hairston v. Wilson*, 1:13cv126, 2013 U.S. Dist. LEXIS 99493, *5-6 (E.D. Va. Feb. 5, 2013), *aff'd*, 532 F. App'x 359 (4th Cir. 2013). *Hairston* observed three instances in which exhaustion was excused: (1) where the government concedes exhaustion is futile; *Hairston*, 1:13cv126, 2013 U.S. Dist. LEXIS 99493, *5-6 (citing *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004); (2) the agency has predetermined the issue; *id.* (citing *Gonzalez v. O'Connell*, 355 F.3d

8

1010, 1016 (7th Cir. 2004); and (3) "the attempt to exhaust such remedies would itself be a patently futile course of action"; *id.* (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).[7] In this instance, exhaustion was not futile of a dead end, the BOP administrative remedy program is not opaque, there was no predetermined outcome because the decision had to be individually reviewed, and any alleged machination did not prevent White from eventually appealing his disciplinary conviction. To the contrary, the BOP review process pointed out White's missteps in appealing after he was served with the DHO report. In the end, White decided not to re-file. In sum, none of the exceptions to exhaustion apply in this case, and the petitioner must be dismissed.

### B. Mootness

With regard to Claim I regarding delay in receipt of the DHO report, it is clear that even if exhausted, the claim is moot.[8] *See Shahan v. Ormond*, No. 3:18cv200, 2018 U.S. Dist. LEXIS 214149, at *14-15 (E.D. Va. Dec. 19, 2018) (concluding that an inmate's claim regarding his failure to receive the DHO Report was moot because, after initiating the action, the inmate received a copy of the DHO Report), *aff'd*, 778 F. App'x 217 (4th Cir. 2019); *see also Mendoza v. Tamez*, 451 F. App'x 715, 717-18 (4th Cir. 2011) ("Prison regulations ... create liberty interests only when they protect inmates from atypical or significant hardship ... in relation to the ordinary incidents of prison life. Late notice of a disciplinary charge does not represent such a hardship."); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely

---

[7] *Ross*, upon which White relies, phrased the three exceptions as: (1) "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" 578 U.S. at 643; (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" *id.* 643-44; and (3) a remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

[8] The claim is not only moot, but also without merit. *See, e.g., Griffin v. Ebbert*, 640 F. Appx 181, 184 (3d Cir. 2016) (finding no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff [v.McDonnell*, 418 U.S. 539 (1974)]").

9

upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law.").

The Court need not address the respondent's remaining arguments because of Petitioner's failure to exhaust his administrative remedies.

## IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment [Dkt. No. 10] is GRANTED, respondent's motions to dismiss are DENIED AS MOOT, and this petition DISMISSED WITH PREJUDICE. An appropriate Order and judgment shall issue.

Entered this 6th day of February 2023.

Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge